UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-CV-23393-GAYLES

YVETTE EGGLESTON,

      Plaintiff,

v.

UNUM LIFE INSURANCE
COMPANY OF AMERICA,

      Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendant's Motion for Summary Judgment on the Administrative Record ("Defendant's Motion") and Plaintiff's Dispositive Motion for Summary Judgment ("Plaintiff's Motion). [ECF Nos. 31, 33]. The Court has reviewed the Motions and the record and is otherwise fully advised. For the following reasons, Defendant's Motion is granted, and Plaintiff's Motion is denied.

## BACKGROUND[1]

Plaintiff Yvette Eggleston began working in the healthcare industry in 2004. She was a clinical nurse and later a research nurse at Johns Hopkins Bayview Medical Center ("Johns Hopkins").[2]

---

[1] The facts in this matter are gleaned from administrative record, [ECF No. 26], as set forth in the parties' statements of fact. [ECF Nos. 30, 32].

[2] Plaintiff has certificates in oncology and charge nursing and experience in clinics, IV therapy, staff/floor nursing, supervising staff, teaching, and telephone triage.

I.      **The Policy**

By virtue of her employment with Johns Hopkins, Plaintiff participated in a group long term disability insurance policy (the "Policy") issued by Defendant Unum Life Insurance Company of America and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Johns Hopkins delegated to Unum complete discretionary authority to make all benefits determinations under the Policy.

The Policy provides eligible employees with a portion of their pre-disability income if they become disabled and defines disability to mean:

-       You are limited from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and

-       You have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation**[3] for which you are reasonably fitted by education, training or experience.

[ECF No. 26-6, p. 15]. The Policy requires evidence of continuing disability to receive ongoing benefits, and proof of loss is required within any period of liability. Benefits payments under the Policy stop when the employee is no longer disabled or "[w]hen [the employee is] able to work in any gainful occupation for which [the employee is] reasonably fitted by education, training or experience on a part-time basis but you choose not to[.]" *Id.* at p. 21.

---

[3] The Policy defines "Gainful Occupation" to mean "an occupation for which you are reasonably fitted by education, training or experience, that is or can be expected to provide you with income within 12 months of your return to work, that exceeds [] 80% of you indexed monthly earnings, if you are working [] or 60% of your indexed monthly earnings, if you are not working. [ECF No. 26-6, p. 30].

## II.       Plaintiff's Health Conditions and Disability Claim

Plaintiff has multiple chronic pain conditions, including lower back pain, fibromyalgia, sciatica, undifferentiated connective tissue disorder ("UCTD"), bilateral hip pain, greater trochanteric bursitis, and inflammatory arthritis characterized by joint stiffness.[4] Since 2011, Plaintiff has seen a number of specialists to diagnose and treat her conditions including Dr. Michael Randolph (primary care/internal medicine), Dr. Ahkhil Chhatre (physiatry[5]), Dr. Yash Yagnesh Mehta (physiatry), Dr. James Son (rheumatology), Dr. Kamini Kuchinad (rheumatology), Dr. Gonzalez-Perez (gastroenterology), Logan Swisher (physical therapy), and Evan Peterson (physical therapy). Plaintiff has taken several different medications to alleviate joint pain and stiffness, including Gabpentin, Cymbalta, Plaquenil, tramadol, lidocaine, tizanidine, dicyclomine, hydrocortisone cream, and ibuprofen.

### A.       2011–2020

Plaintiff stopped working at Johns Hopkins on February 21, 2011, and on August 1, 2011, submitted a claim for long term disability. Unum approved the claim, finding it [a]ppear[ed] medically reasonable" due to "MRI findings and bilateral hip bursitis that [Plaintiff] would have difficulty with prolonged standing and walking." [ECF No. 32 ¶ 26]. On October 1, 2012, Unum agreed that Plaintiff was disabled from sedentary work, finding that "there appears to be current medical documentation related to a chronic multi-contributory pain syndrome (without durable amelioration-abolition of pain complaints) and co-morbid gastrointestinal issues (which have significantly affected treatment efficacy) which have precluded reliably sustainable functional

---

[4] Plaintiff's physicians diagnosed her with these conditions at different times. For example, doctors diagnosed her with bilateral hip pain/sciatica in 2011, fibromyalgia in 2013, and UCTD in 2015.
[5] A physiatrist is "a physician who specializes in physical medicine and rehabilitation." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/physiatrist (last visited Sept. 24, 2024).

capacity at any level including that [of sedentary work]." *Id.* ¶ 27. Unum reviewed Plaintiff's claim again in 2013, 2014, and 2015, each time finding, based on treating physician reports, medical records, and Plaintiff's subjective pain complaints, that Plaintiff remained disabled from any sedentary occupation. *Id.*¶¶ 28, 29, 30.

Unum then transferred Plaintiff's claim to its Core department for annual, less intensive reviews. *Id.* ¶ 31.[6] From 2018 through 2020, Unum conducted annual reviews of Plaintiff's claim. Each time, Unum concluded that Plaintiff was still disabled.[7]

**B.      January to September 2021**

In January 2021, Plaintiff saw Dr. Randolph. His notes from that visit indicate that Plaintiff did not complain regarding pain and her medications stayed the same. During her March 2021 visit, Plaintiff complained of joint pain and rheumatologic issues, however, Dr. Randolph's notes indicate that a visual inspection of her extremities was normal. While Dr. Randolph did not order any diagnostic testing, he continued to opine that she was totally disabled and unable to return to work.

On May 17, 2021, Plaintiff attended an appointment with Dr. Son during which she denied overall joint stiffness but reported that her left wrist had been swollen, painful, and stiff. Dr. Son's physical examination of Plaintiff revealed no acute distress, but that Plaintiff had squaring of the first thumb joint and fibromyalgia tender points. An ultrasound of Plaintiff's wrist revealed "mild synovial hypertrophy" of the radiocarpal joint, and her lab work documented a sedimentation rate within normal range (24 mm/hour).[8] [ECF No. 30 ¶ 44].  During Plaintiff's follow-up appointment

---

[6] On September 12, 2017, Defendant offered Plaintiff a lump sum settlement in lieu of ongoing monthly benefits. Plaintiff declined the offer.
[7] Plaintiff was awarded Social Security Disability on January 20, 2016.
[8] Sedimentation rate is a blood test that checks for inflammation in the body. A normal sedimentation rate for women older than 50 year of age is 0 to 30 mm/hour. [ECF No. 30 n. 9 (citing https://www.webmd.com/a-to-z-guides/your-sedimentation -rate)].

with Dr. Son in June 2021, she reported that her wrist pain persisted but had improved. Dr. Son reported that Plaintiff was not in acute distress or experiencing fibromyalgia tender points, had no indication of synovitis in her joints other than the left wrist, and had a negative Finkelstein's test.[9] Dr. Son also noted that Plaintiff's lab work from May 24, 2021, was unrevealing and that an X-ray of her hands on May 26, 2021, was unremarkable. Dr. Son directed Plaintiff to remain on Plaquenil for her UCTD and Cymbalta for her fibromyalgia.

On September 8, 2021, Dr. Randolph examined Plaintiff. He did not perform or order any diagnostic tests and did not change her medication. Following the visit, Dr. Randolph provided Unum with an Attending Physician Statement ("APS") which lists UCTD, fibromyalgia, sciatica, and neuropathic pain as Plaintiff's diagnoses. Dr. Randolph based Plaintiff's diagnoses on her self-reported symptoms, past imagery, blood work, and information from Plaintiff's specialists. Dr. Randolph recommended the following restrictions: occasional siting (10-30 minutes), standing for 10-25 minutes, walking half to one full block, lifting very light objects, slight twisting, no climbing, no reaching "way above shoulder height", and no pushing or pulling. [ECF No. 30 ¶ 26]. Dr. Randolph also stated that Plaintiff remained disabled. On September 16, 2021, Unum conducted its annual Core review and determined that, based on Dr. Randolph's updated APS, Plaintiff did not have the functional capacity to return to work on a sustained basis at that time.

---

[9] A Finkelstein Test is used to diagnose first dorsal compartment tendonitis brought on by inflammation of the wrist tendons at the base of the thumb. Inflammation causes the compartment around the tendon to swell and enlarge, making thumb and wrist movement painful. Pain is indicated by a positive Finkelstein's test result. [ECF No. 30 n. 12 (citing https://www.physio-pedia.com/Finkelstein_Test)].

### III.     Unum Reevaluates Plaintiff's Claim

#### A.     Social Media Investigation

On September 22, 2021, Unum initiated an investigation into Plaintiff's social media accounts. During this search, Unum found several posts on Plaintiff's Facebook page promoting "Yvette's Soul Food Kitchen." *Id.* ¶ 28. From October 2020 through May 2021, Plaintiff posted messages on Facebook advertising meals, menus, and contact information. Plaintiff told viewers to "CALL YVETTE . . . FOR ORDERS [and that] DELIVERY [was] AVAILABLE FOR ORDERS." [10] *Id.* ¶ 29.

Unum's investigation into Plaintiff's social media also revealed that Plaintiff traveled to Saint Thomas in the Virgin Islands at the end of July 2021, attended a three-hour performance of the Rickey Smiley Show in Baltimore on September 12, 2021, and attended a wedding in Houston, Texas, on September 27, 2021.

#### B.     Unum Transfers Plaintiff's Claim out of Core

On September 23, 2021, Unum transferred Plaintiff's claim out of Core. In October 2021, Unum found that Plaintiff's "[social media] activity [] would indicate improved functional capacity, and there [have] not been any updated medical records that include physical examinations, or updated diagnostics, including inflammatory markers to assess current [functional capacity]. Current [functional capacity] unclear." [ECF No. 30 ¶ 40]. After that finding, Plaintiff, her providers, and Unum had the following interactions:

**October 19, 2021:** At her appointment with Dr. Kuchinad, Plaintiff reported "that she is doing okay," and "denie[d] any distinct joint stiffness or pain." [ECF No. 30 ¶ 52]. Dr. Kuchinad's

---

[10] Plaintiff's Facebook posts also indicated that the meals were her "Creation." [ECF No. 30 ¶ 29]. Plaintiff disputes Unum's implication that Yvette's Soul Food Kitchen was a full-time catering business. [ECF No. 40 ¶¶ 28-29].

physical exam documented "multiple fibromyalgia tender points [] primarily in her upper chest around her sternum, upper back and lower back." [ECF No. 40 ¶ 52]. He did not adjust Plaintiff's medications.

**October 21, 2021:** Dr. Randolph wrote Unum reiterating that Plaintiff "experiences recurrent chronic pain, malaise and fatigue, and worsening joint pain, also including fibromyositis symptoms, muscle spasms which all contribute to her ongoing disability and often limits her ability to perform her ADLs (Adult Living Activities)." [ECF No. 32 ¶ 39]. Dr. Randolph opined that it was his opinion that Plaintiff was still "TOTALLY disabled AND UNABLE TO RETURN TO WORK." *Id.*

**November 2021:** Plaintiff attended a status call with Unum. During the call, she indicated that she sometimes walks 7 to 8 minutes to visit her sister, that her "[treatment] plan has stayed the same," and that her fibromyalgia flares "usually [] don't immobilize her all day, they take a few hours [before] she reverts back to her baseline." *Id.* ¶ 36

**November 23, 2021:** An MRI of Plaintiff's lumbar spine showed "degenerative changes in the lumbar spine, without any spinal canal stenosis or high-grade foraminal narrowing." [ECF No. 30 ¶ 54].

**November 23, 2021:** Dr. Randolph responded to a letter from Unum asking if he would release Plaintiff to full time work. He checked no and explained that her conditions "prevent her from performing occupational demands." [ECF No. 32 ¶ 40].

**December 2021:** Plaintiff had an appointment with Dr. Randolph where she reported "fluctuating" back pain, "moderate" hip pain, and "fluctuating" fibromyalgia issues. [ECF No. 30 ¶ 50]. Dr. Randolph did not change her medication or order diagnostic tests. Dr. Randolph maintained that Plaintiff was totally disabled and unable to return to work.

**December 14, 2021:** Plaintiff met with Dr. Kuchinad due to a flare of fibromyalgia symptoms. Dr. Kuchinad's notes indicate that Plaintiff was not in acute distress. He encouraged her to seek mental health counseling, continue exercising, and increase her exercise regime. He also increased her Cymbalta prescription to help relieve reported anxiety.

**December 20, 2021:** Dr. Kuchinad wrote to Unum opining that Plaintiff is disabled due to her diagnoses of UCTD and fibromyalgia.

### C.   Unum's Medical Consultants Find Plaintiff's Work Restrictions Are No Longer Supported

#### 1.   Christina Young, R.N.

On January 4, 2022, Unum transferred Plaintiff's medical file to registered nurse Christina Young for clinical review. Ms. Young found that "although [Plaintiff] and [attending physicians] continue to assert inability to [return to work] due to flares of chronic pain and fatigue, updated medical records document [that] osteoarthritis, degenerative joint disease, fibromyalgia and inflammatory arthritis/UCTD are generally stable and controlled with flares described as mild to moderate." [ECF No. 30 ¶ 58]. Ms. Young further found that (1) Plaintiff's inflammatory markers were within normal limits; (2) Plaintiff's low back and hip pain improved with joint injections; (3) Plaintiff had no follow-up appointments with pain management; and (4) Plaintiff's left wrist synovitis and tenderness improved following a triamcinolone injection. Ms. Young concluded that, based on Plaintiff's increased level of activity (as documented by her social media accounts) and the lack of evidence of medication changes or severe, uncontrolled pain complaints, it was reasonable to find that Plaintiff's "condition has improved and [restrictions and limitations] are overly restrictive." *Id.* ¶ 60.

### 2.   Dr. Todd Lyon

In January 2020, Unum asked Dr. Todd Lyon, a physician board-certified in family medicine, to review Plaintiff's file. Dr. Lyon noted that, with respect to Plaintiff's reported back and hip pain, her records reflected a normal gait, routine presentation in no acute distress, and that none of her providers recommended surgery. With respect to Plaintiff's diagnosis for UCTD, Dr. Lyon found (1) her rheumatology blood work was "unremarkable"; (2) her recent inflammatory determinations were normal; (3) most of her physical exams documented the absence of synovitis, red joints, swollen joints, or hot joints; (4) MRI studies of her wrists and hands did not show significant joint erosion; (5) there were no physical findings documenting the presence of any significant hand or finger dysfunction; and (6) Plaintiff's joint disease appeared well-controlled with her current dose of Plaquenil. *Id.* ¶ 62-63. Based on these findings, Dr. Lyon concluded that, while Plaintiff should avoid strenuous activity and heavy lifting, her ongoing work restrictions and limitations were no longer supported and she could perform full-time sedentary work.

On January 13, 2022, in response to Dr. Lyon's opinion and request for clarification, Dr. Randolph reiterated that he was against Plaintiff returning to work. Similarly, on January 24, 2022, Dr. Mehta wrote to Unum that Plaintiff "is not able to tolerate sitting or standing for greater than 5 minutes," "has significant pain throughout her body, and can flare up the pain that her underlying pain already causes," and that therefore, he would "strongly recommend against the patient returning to work." [ECF No. 32 ¶ 43].[11]

---

[11] Plaintiff saw both Dr. Mehta and Dr. Randolph on January 24, 2024. Dr. Mehta's notes indicate that Plaintiff was "doing ok" and presented in mild distress. [ECF No. 30 ¶ 68]. Dr. Robinson's notes indicate that Plaintiff reported 9/10 in pain in her right shoulder and bruising and swelling in her left ankle. Following her physical examination, Dr. Robinson noted moderate pain with motion. Neither Dr. Mehta or Dr. Robinson changed Plaintiff's treatment plan or medications.

### 3.      Dr. Gross

In February 2022, based on the disagreement of opinion between Dr. Lyon and Plaintiff's providers, Unum obtain a second medical opinion from Dr. Zachary Gross, a physician board-certified in internal medicine. Dr. Gross agreed with Dr. Lyon that Plaintiff's medical records did not evidence ongoing functional incapacity. Specifically, Dr. Gross found:

> There are no specific physical findings in the medical records to support that the claimant would be unable to perform occupational demands as outlined. Since 2013, the insured has been considered to have an inflammatory connective tissue disorder which has been controlled with [P]laquenil and does not currently preclude the insured from performing sedentary occupational demands. Regarding generalized pain, the claimant has had positive tender points on examinations, which has been consistent with the diagnosis of FMS. This has been stable on gabapentin. . .. The claimant is currently being treat[ed] on [Cymbalta]. There are no clinical findings present in the available records to support the degree of the insured's self-reported impairment precluding the performance of the outlined occupational demands.

[ECF No. 30 ¶ 71].

### 4.      February 2022 Status Call

Plaintiff had a status call with Unum in February 2022, during which she reported that she had a bad fall due to her fibromyalgia. Following the fall, she had an appointment with a pain management specialist and Dr. Randolph and received an injection. Plaintiff told Unum that she "recently" started to feel better. [ECF No.  30 ¶ 72].[12]

### 5.      Transferrable Skills Assessment

Unum also had a vocational rehabilitation consultant conduct a transferable skills assessment for Plaintiff. On February 4, 2022, the vocational rehabilitation consultant opined that Plaintiff had transferable skills for alternate occupations within sedentary physical demands and

---

[12] Following her fall, Plaintiff saw physical therapists Logan Swisher and Evan Peterson. This was her fifth round of physical therapy since 2011.

that Plaintiff could perform the following occupations that met the Policy's definition of a gainful wage: triage nurse, utilization review coordinator, and medical claims review nurse.

### 6. Follow Up Reports and Closing of Claim

In March 2002, Ms. Young completed an additional review of Plaintiff's records and found that, despite the recent fall, there was no significant injury "that would result in loss of sustained functional capacity to perform primarily seated activity." *Id.* ¶ 73. Dr. Lyon also completed an addendum to his prior review, again concluding that Plaintiff's medical record did not support her providers restrictions against any sedentary occupation. On March 31, 2022, Dr. Gross submitted an addendum to his review, concluding that despite her fall, Plaintiff's records did not support a finding that completely precluded her from sedentary work.

On April 4, 2022, Unum notified Plaintiff that it had determined that she is no longer "disabled" under the Policy and was closing her claim.

### 7. Plaintiff's Symptoms and Treatment Following Termination of Claim

On April 5, 2022, Plaintiff had an appointment with Dr. Kuchinad, during which she reported increased pain. Dr. Kuchinad noted that Plaintiff's "Plaquenil levels were undetectable" and that Plaintiff stated that "she has stopped the Plaquenil at various times for various reasons due to concern that it was playing a role in her symptoms. She restarted it two weeks [prior to the appointment]." [ECF No. 30 ¶ 77; ECF No. 40 ¶ 77]. After her appointment, Dr. David McGinnis, the attending rheumatology physician at Johns Hopkins, reviewed Plaintiff's record and noted that her "inflammatory conditions seem well controlled on Plaquenil . . . She has concomitant history of fibromyalgia and strategies for controlling the diffuse pain were discussed with her." [ECF No. 30 ¶ 80].

On April 11, 2022, Plaintiff attended physical therapy for the first time since October 2020. Though Plaintiff self-reported significant pain in her back and right shoulder, within a week her physical therapists noted "almost full [right] shoulder [passive range of motion] in all planes with mild pain reported at end range but continues to demonstrate limited [right] shoulder [active range of motion] with apprehension and fear avoidant behavior." *Id.* ¶ 83.

On April 12, 2022, Dr. Chhatre wrote a letter to Unum stating that "[b]ased on our thorough evaluation of the [her] chart, her diagnoses, as well as her physical exam, it is my medical opinion that [Plaintiff] is NOT able to work under any capacity." [ECF No. 32 ¶ 47].

On April 17, 2022, Dr. Kuchinad responded to a letter from Unum asking whether she would agree that Plaintiff had the ability to perform sedentary activity and whether she would release Plaintiff to return to work full time. Dr. Kuchinad did not agree. On April 18, 2022, Dr. Randolph again wrote Unum, strongly recommending against Plaintiff returning to work.[13]

Both Dr. Lyon and Dr. Gross reviewed the additional information submitted by Plaintiff's providers and stood by their opinions that Plaintiff's ongoing work restrictions were no longer supported by clinical findings. On May 5, 2024, Unum informed Plaintiff that "the additional information [it] received [did] not change [its] prior decision." [ECF No. 32 ¶ 50].

## IV.    Plaintiff's Administrative Appeal

On August 1, 2022, Plaintiff appealed the termination of her benefits. In support, Plaintiff submitted a June 2022 functional capacity evaluation ("FCE"), pain and capacity questionnaires from her treating providers, medical records, and letters. Dr. Gonzalez-Velez, Plaintiff's gastroenterologist, wrote a letter in support of Plaintiff, noting that her gastrointestinal issues can have frequent exacerbations that can be unpredictable in nature and concluded that the combination

---

[13] Dr. Randolph noted that Plaintiff's laboratory results on April 6, 2022, showed elevated inflammatory markers.

of her medical conditions impacts her need for ongoing disability. Drs. Randolph, Chhatre, Mehta, Kuchinad, and Gonzalez-Velez and physical therapists Swisher and Peterson all stated the following in their pain and capacity questionnaires: (1) Plaintiff's pain was severe or moderately severe; (2) she could not sit for more than two hours per day; (3) she could rarely carry more than ten pounds; (4) her pain would be severe enough to interfere with concentration and attention disrupting at least 25% or more of the workday; (5) she would be expected to miss work more than four days a month due to symptoms or treatment; and (6) she could not return to work.

Occupational therapist Neil Taylor administered Plaintiff's FCE which found that Plaintiff was unable to sit for longer than thirty-five minutes and started shifting her weight after only about ten minutes, unable to stand more than fifteen minutes, unable to walk for more than ten minutes, and unable to carry more than eight pounds with two hands. Based on these results, Mr. Taylor concluded that "[d]ue to the extensive nature of [Plaintiff's] functional limitations [and] multiple diagnos[es], she is currently incapable of working in any capacity." [ECF No. 32 ¶ 55].[14] Occupational therapist David Bledsoe independently validated Plaintiff's FCE and agreed that she did "not demonstrate the ability to sit at a level beyond occasional making a release to full duty not possible." *Id.* ¶ 56.

On August 23, 2022, Unum's nurse consultant, Jacqueline Ballback, reviewed Plaintiff's records and found that there was insufficient evidence to support Plaintiff's claim of severe right shoulder, back, and bilateral hip and knee pain. Ms. Ballback noted that (1) diagnostic imaging was noted as "mild"; (2) Plaintiff continued to receive treatment in the form of periodic joint injections, physical therapy, and a medication regime; (3) Plaintiff's UCTD was largely stable;

---

[14] Although the conclusion of the FCE was that Plaintiff was incapable of work in any capacity, it did show functional capacity for sedentary and light work in multiple areas. [ECF No. 38 ¶ 55].

and (4) Plaintiff's SED rate was slightly elevated but previous inflammatory markers had been normal. Ms. Ballback also commented that Plaintiff's Palquenil level in October 2021 was below 15 ng/mL, which was "considered complete non-adherence" with the prescribing physician's recommendations. [ECF No. 30 ¶ 91].

On September 6, 2022, Dr. Arlen Green, a physical medicine and rehabilitation doctor, reviewed Plaintiff's medical records. Dr. Green noted the absence of any neurological deficit, gait abnormalities, or acute injury and that "one would anticipate additional treatment and/or more aggressive intervention if the claimant's condition were of the severity to result in [restrictions and limitations]. [ECF No. 30 ¶ 93]. At bottom, Dr. Green concluded that Plaintiff's "clinical findings do not rise to the level of functional impairment in this case. The claimant's findings are overall mainly self-reported. She does not have any dangerous pathology in the diagnostic studies [and that] the findings provided for review would not preclude her ability as of 04/04/22" to engage in the duties of a sedentary occupation. [ECF No. 30 ¶ 96].[15]

On September 14, 2022, Unum denied Plaintiff's administrative appeal finding that the "available information does not support impairment which would preclude [Plaintiff] from performing the alternate gainful sedentary occupations identified." [ECF No. 32 ¶ 59].

## V.    This Action

On October 18, 2022, Plaintiff filed this action against Unum to recover long-term disability benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). The parties have now filed competing motions for summary judgment.

---

[15] Dr. Green considered Plaintiff's FCE report. Although the FCE concluded that Plaintiff is totally disabled, Dr. Green found that the report did not reveal an elevated heart rate as he would expect to find with strength testing or stair testing.

## LEGAL STANDARD

In ERISA benefit denial cases, "the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Curran v. Kemper Nat'l Servs., Inc.* No. 04-14097, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005) (internal quotations omitted). As a result, "the typical summary judgment analysis does not apply to ERISA cases." *Ruple v. Hartford Life and Acc. Ins. Co.*, 340 F. App'x 604, 610 (11th Cir. 2009). "Thus, there may indeed be unresolved factual issues evident in the administrative record, but unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they normally would." *Miller v. PNC Fin. Serv. Grp.*, 278 F. Supp. 3d 1333, 1341 (S.D. Fla. 2017) (internal quotation omitted).

"ERISA itself provides no standard for courts reviewing the benefits decisions of plan administrators or fiduciaries." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011). However, the Eleventh Circuit, based on guidance by the Supreme Court, has "established a multi-step framework to guide courts in reviewing an ERISA plan administrator's benefits decisions." *Id.* The steps are as follows:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355. Where the plan administrator had discretion to review claims under the plan, "the district court may assume the benefits decision was *de novo* wrong and begin its analysis at step three." *Lopez v. Life Ins. Co. of North America,* No. 20-25259, 2021 WL 4307049, at * (S.D. Fla. Sep. 21, 2021) (citing *Mickell v. Bell/Pete Rozelle NFL Players Ret. Plan,* 832 F. App'x 586, 591 (11th Cir. 2020).

"Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship*, 644 F.3d at 1354. The claimant has "the burden of proving [her] entitlement to contractual benefits." *Hortan v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998).

## ANALYSIS

It is undisputed that Johns Hopkins delegated to Unum complete discretionary authority to make all benefits determinations under the Policy. Therefore, for purposes of this Order, the Court assumes that Unum's decision was *de novo* wrong and jumps to step three of the analysis: whether Unum's decision was arbitrary and capricious. *See Campbell v. Reliance Standard Life Ins. Co.*, 857 F. App'x 570, 572 (11th Cir. 2021).

## I.   Reasonable Grounds Supported Unum's Decision

The Court finds that reasonable grounds supported Unum's decision; and, therefore, the decision was not arbitrary and capricious. "When conducting a review of an ERISA benefits denial

16

under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008). "A reasonable determination is not necessarily the best determination, or even the result the Court would have reached." *Lopez,* 2021 WL 4307049, at *8 (quoting *Bloom v. Hartford Life & Accident Ins. Co.*, 917 F. Supp. 2d 1269, 1285 (S.D. Fla. 2013). "So long as a Defendant's decision 'has a reasonable factual basis,' the Court must uphold its determination, 'even if the record also contains contrary information.'" *Id.* (quoting *Slomcenski v. Citibank*, *N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005)).

The record here shows competing opinions as to whether Plaintiff was disabled, as defined by the Policy, when Unum terminated her benefits. As detailed above, Plaintiff documented her disability primarily through the reports of seven treating providers who routinely maintained that Plaintiff is unable to return to work. Their opinions were based on Plaintiff's self-reported symptoms and pain levels, physical examinations, and imaging over the course of many years.[16] In addition, Plaintiff submitted an independent FCE which provided that Plaintiff is unable to return to work in any capacity.

On the other hand, Unum relied on the opinions of three reviewing physicians—Drs. Lyon, Gross, and Green, and two reviewing nurse consultants—Ms. Young and Ms. Ballback[17] Each of

---

[16] Aside from a slightly elevated SED rate in 2022, the record appears to reflect that Plaintiff's bloodwork was unremarkable during the relevant time period.

[17] It appears that the impetus for Unum's harder look at Plaintiff's claim was its investigation into Plaintiff's social media accounts. While the record reflects that Plaintiff cooked meals for a limited number of friends or customers, traveled a few times, and attended a comedy show, these incidents, without more, do not support a finding that Plaintiff is no longer disabled. *See e.g., Doe v. Unum Life Ins. Co. of Am.*, 35 F. Supp. 3d 182, 194 (D.Mass 2014) ("occasional travel is not the same as working a demanding day job"). However, as detailed above, these activities, combined with

these reviewers found that Plaintiff's medical records did not support her providers' claims that she was incapable of any work. Moreover, they found that the suggested limitations on Plaintiff's work were overly restrictive. Notably, Unum communicated quite frequently with Plaintiff's providers and appears to have considered most, if not all, of their opinions and supporting evidence. Unum's reviewers simply reached a different conclusion as to what findings the records supported. For example, Dr. Gross found that Plaintiff's conditions were well-controlled on medication and "there are no clinical findings in the available records to support the degree of [Plaintiff's] self-reported impairment to support the restrictions and limitations opined by the [attending physician]." [ECF No. 26-5 at p. 166]. Dr. Lyon found that while Plaintiff had chronic conditions, they did not completely preclude her from performing sedentary occupational demands. Ms. Young found that Plaintiff's inflammatory markers were within normal limits and that her pain improved with injections. And, with respect to the FCE, Dr. Green found that the FCE failed to show elevation in Plaintiff's heart rate during testing—a possible sign that the results were not entirely valid. While Dr. Green might be wrong as to whether Plaintiff was malingering, it was not unreasonable for Unum to give less weight to the FCE based on Dr. Green's report. In short, Unum's extensive review found that Plaintiff's conditions had stabilized and were managed by medication. This finding, while different from what Plaintiff's providers or even the Court might opine, is not unreasonable and is supported by evidence in the record. Indeed, "administrators are not obliged to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). "[W]here [the plaintiff's] own doctors offered different medical opinions than [the administrator's] independent doctors, the []

---

Unum's detailed review of Plaintiff's medical records, are enough to fund that Unum's decision was not arbitrary and capricious.

administrator may give different weight to those opinions without acting arbitrarily and capriciously." *Blankenship*, 644 F.3d at 1356 (citations omitted). Accordingly, the Court finds that Unum's decision was not arbitrary and capricious.

## II.     Unum's Structural Conflict of Interest Does Not Change the Result

Unum does not dispute the existence of a structural conflict of interest as both insurer of long-term disability benefits and claims administrator; however, Unum argues that it was not motivated by such a conflict. A conflict of interest is "merely [] a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Blankenship*, 644 F.3d at 1355. "[T]he burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id.* at 1357.

The Court finds that Plaintiff has not met her burden to show that Unum's decision was arbitrary and capricious—even with Unum's structural conflict. Beyond the mere existence of the conflict, there is nothing in the record to reflect that the conflict influenced Unum's decision. Indeed, the Eleventh Circuit has expressly stated that "the presence of a structural conflict of interest is an unremarkable fact in today's marketplace." *Wright v. Reliance Standard Life Ins. Co.*, 844 F. App'x 141, 145 (11th Cir. 2021) (quoting *Blankenship*, 644 F.3d at 1356).

Accordingly, the Court finds that Unum's decision to terminate Plaintiff's LTD benefits was not arbitrary and capricious.

## <u>CONCLUSION</u>

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.     Defendant's Motion for Summary Judgment, [ECF No. 31], is **GRANTED**, and Plaintiff's Dispositive Motion for Summary Judgment, [ECF No. 33], is **DENIED**.

2.      The Court will enter a separate final judgment pursuant to Federal Rule of Civil

Procedure 58.

3.      This case is closed, and all pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of October, 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE